UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VINCENT MCCARTTHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| ALEJANDRO MAYORKAS, SECRETARY, ) | |
| DEPARTMENT OF HOMELAND SECURITY, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, VINCENT MCCARTHY, by and through his undersigned attorney, files this COMPLAINT against DEFENDANT, ALEJANDRO MAYORKAS, in his capacity as SECRETARY OF DEPARTMENT OF HOMELAND SECURITY, alleging, as follows:

**INTRODUCTION**

This suit claims violation of the Plaintiff's rights under Title VII of The Civil Rights Act of 1964, The Age Discrimination in Employment Act of 1967 (ADEA), and the Florida Civil Rights Act, Florida Statutes Section 760.10.  Plaintiff, Vincent McCarthy, was terminated from his position as a Disaster Safety Officer - Reservist by the Defendant, Federal Emergency Management Agency, Department of Homeland Security ("DHS" or "FEMA" or "Agency") on May 28, 2019.  By way of his termination and demonstrated by actions taken by the Defendant prior to his termination, Plaintiff was subjected to discrimination based on age and reprisal for his prior and ongoing protected activity within the EEO complaint process as a complainant, and for vocalizing and attempting

1

to organize numerous members of the workforce to file an "EO" complaint. As a Disaster Safety Officer, Mr. McCarthy, was subjected to reprisal and discrimination when Defendant's employees demobilized him from an assigned deployment, failed to properly investigate claims against him, treated younger employees more favorably, listed him as "unavailable" for deployment for several months after his demobilization, refused to provide him information upon inquiries about his work and deployment status, and finally terminated his position. At the time of his termination, Plaintiff was the oldest member of his deployment team.

## PARTIES

1. Plaintiff, VINCENT MCCARTHY, is an individual who at all times material to this complaint was an employee of the Defendant within the meaning of "employee" in Title VII of the Civil Rights Act of 1964 and The Age Discrimination Act of 1967.

2. Defendant, ALEJANDRO MAYORKAS, is the Secretary of the Department of Homeland Security, and is being sued here in his official capacity as Secretary of Plaintiff's employer.

## JURISDICTION

3. Plaintiff brings this action under the Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 1331 and § 1343, 42 U.S.C. § 2000e-3; The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623; Florida Civil Rights Act, Florida Statutes Section 760.10; and the Fifth Amendment of the United States Constitution ("deprived of life, liberty, or property, without due process").

4. This Court has jurisdiction pursuant to the following statutes:

      a.    28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

      b.    28 U.S.C. § 1343 (3) and (4), which gives a district court jurisdiction over action to secure civil rights extended by the United States government.

## ADMINISTRATIVE PREREQUISITES

5.    Prior to filing a civil action under Title VII of the Civil Rights Act of 1964, a federal sector Plaintiff must first exhaust the administrative process set out at 29 C.F.R. Part 1614. Plaintiff received a Final Order from the Office for Civil Rights and Civil Liberties on behalf of Defendant's Agency on July 14, 2021, via email, demonstrating exhaustion of the administrative process. The Plaintiff exercises his appeal rights for all matters appealable from his administrative complaint, as described in the stated statutes, and as considered by the Defendant's agency and the Equal Employment Opportunity Commission (EEOC), in exhaustion of the administrative process. All matters prosecuted in this Complaint, are related to Title VII of the Civil Rights Act of 1964 and 4 2 U.S.C. § 2000e-3, *et seq.*, and The Age Discrimination in Employment Act of 1967 and 29 U.S.C. § 623, *et seq.*, and are intertwined and within the scope of the discrimination and reprisal charged, and exhausted.

## VENUE

6.    Venue lies within the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391 (e)(1) because Plaintiff resides in Sarasota County, Florida, where he resided at all times during his employment with the United States Department of Homeland Security, Federal Emergency Management Agency.

## FACTUAL ALLEGATIONS

7. Plaintiff, Vincent McCarthy, began employment with the Defendant agency in October 2004 as in the FEMA Safety Cadre as a Disaster Assistance Employee.

8. In October 2015, Plaintiff changed position to that of a Safety Officer, Level III – Reservist.

9. Plaintiff's year of birth is 1940.

10. In the fall of 2018, Plaintiff was deployed to a disaster, identified as DR-4399-FL, as a Disaster Safety Officer.

11. Plaintiff's first line supervisor was James Casey Platt, Lead Safety Officer.

12. Plaintiff's second line supervisor was Lamar Turner, Disaster Safety Cadre Manager.

13. Plaintiff's third line supervisor was Cherry Oscar, Branch Manager Disaster Safety Operations/Chief of Disaster Operations.

14. During more than one occasion while James Casey Platt was offsite, Plaintiff was assigned as the Acting Lead Safety Officer for DR-4399-FL.

15. For several weeks in November and December 2019, Plaintiff made known to a wide range of co-workers through numerous verbal discussions and emails with his co-workers, and his Lead Safety Officer Mr. Platt, his intention to file an "Equal Rights" or "ER" complaint against Cherry Oscar for what Plaintiff to be agency policy violations.

16. On or about December 18, 2019, Plaintiff met with Margarita Gonzalez Fiel, Equal Rights Advisor, about how to file an "EO" complaint regarding an issue of agency

policy and that he wanted to register a complaint as a whistleblower regarding the violation.

17. During the December 18, 2019 meeting with the Agency's Equal Rights Advisor, Plaintiff was informed that his issue did not fall under the jurisdiction of the Equal Rights Office and was provided a contact in the Employee Specialist office to proceed with his complaint.

18. On or about January 3, 2019, Complainant received a phone call from Cherry Oscar, Chief Disaster of Operations, and Plaintiff's second-line supervisor, informing him he was being demobilized, immediately, from his assigned disaster.

19. On the January 3, 2019 phone call Cherry Oscar informed Plaintiff he was being demobilized because of his alleged failure to comply with safety forms and procedures.

20. Ms. Oscar also informed Plaintiff that he was being temporarily demoted from Lead Safety Officer to Safety Officer.

21. In an email sent by Ms. Oscar on January 3, 2019, Ms. Oscar informed Plaintiff that he would be required to be assigned a mentor and complete training courses, such as the "mission rehearsal" training course and the "981 refresher" training course before being reinstated as a Lead Safety Officer.

22. Prior to receiving the phone call from Cherry Oscar, Plaintiff had received no formal or informal counseling about his completion of safety forms, nor had any issues raised to him by his first line supervisor, Mr. Platt.

23. On January 8, 2019, Cherry Oscar emailed Plaintiff alleging a complaint had been brought to her attention about his conduct during his last deployment and requested he respond to numerous questions about the allegations.

24. On January 18, 2019, Mr. McCarthy communicated in email to Cherry Oscar responding to the questions she emailed him about allegations regarding inappropriate comments in the workplace.

25. In Plaintiff's email, he provided detailed information about any recollection he had of conversations, and primarily denied the occurrence of several situations inquired about by Cherry Oscar.

26. In Plaintiff's January 18, 2019 email, Plaintiff also shared instances of comments made by younger members of the deployment team that were contractors which included comments about sexual interactions with their partners, as well as relaying hostile behavior, including an outburst from a younger contractor while Plaintiff was acting as Lead Safety Officer in Mr. Platt's absence, informing Ms. Oscar about the possibility of disgruntled employees due to this concern about the nature of the accusations contain in Ms. Oscar's questions.

27. Plaintiff's January 18, 2019 email also raised his concern that he had been demobilized because of his age due to the sudden nature of the demobilization and Ms. Oscar's original reason provided to him – allegations that he had not complied with safety forms and procedures – for his demobilization in the January 3, 2019 phone call, and due to no action being taken against the younger employee who had yelled at him in the workplace as previously reported to Mr. Platt.

28. On February 4, 2019, Plaintiff emailed Cherry Oscar inquiring about her January 2019 email outlining the requirements Plaintiff must complete following his demobilization for the allegations that he did not comply with safety forms or procedure.

29. In Plaintiff's February 4, 2019 communication he reiterated he understood from Ms. Oscar's previous communication that he was supposed to complete a 60 day monitoring period and complete training courses and he requested clarification about the mentoring because he had received no further guidance on what steps to take to complete the monitoring.

30. Plaintiff did not receive any information in response to his February 4, 2019 email to Cherry Oscar.

31. On February 22, 2019, Plaintiff initiated the informal EEO complaint process about the events he had experienced since his demobilization on January 3, 2019, by contacting Defendant's designated Equal Employment Opportunity (EEO) Counselor.

32. On or around March 7, 2019, Complainant became aware he had been designated as "unavailable" for deployment in FEMA's system.

33. The designation of "unavailable" for deployment also prevented him from attending a required training.

34. On or around March 7, 2019, Complainant learned that Cherry Oscar was responsible for designating him as "unavailable" for deployment without any notice provided to him.

35. On March 11, 2019, Complainant emailed Lamar Turner inquiring about his "not available" status designation and whether he would be permitted to complete a required training.

36. On March 12, 2019, Complainant again emailed Lamar Turner following up about his inquiry the day before about being designated "not available."

37. On March 12, 2019, Lamar Turner responded to Complainant that he was permitted to attend the training he was inquiring about, and also informed Plaintiff that he needed to "interview you concerning the allegations brought against you while you were deployed in FL" in accordance with direction from the "FEMA harassment unit" and asking Plaintiff to identify a good time for Plaintiff to discuss it with him.

38. On March 19, 2019, Plaintiff's legal representative responded to Mr. Turner with inquiries about the request for Mr. McCarthy to be interviewed about allegations ensuring Mr. Turner had Plaintiff's answers to Cherry Oscar's inquiries in January 2019 and requesting contact information for the FEMA harassment unit to verify the request's origin.

39. On March 20, 2019, Lamar Turner responded to Plaintiff and Plaintiff's legal representative indicating he is "no longer the POC and [I] have forwarded your request to the Office that had assigned me this task."

40. On March 21, 2019, Plaintiff via his representative requested the contact information for the office referred to by Lamar Turner in his March 20, 2019 email.

41. That same day, less than two hours later, Cherry Oscar returned Plaintiff's email to Lamar Turner stating, "Mr. Lamar Turner and myself have forwarded Mr.

8

McCarthy's file for a management inquiry review, which is well within the right of our agency to do. If there is any additional investigation required of Mr. McCarthy he will be notified. At this time, Lamar and I have collected all the information we needed."

42. On April 9, 2019, Defendant's EEO Counselor interviewed Plaintiff about the issues he had experienced since January 2019.

43. On May 2, 2019, Plaintiff received correspondence from the Defendant notifying Plaintiff of his right to file a formal complaint of discrimination.

44. On May 15, 2019, Plaintiff advanced his informal EEO complaint to the next administrative stage by filing a formal complaint of discrimination against Defendant.

45. In his complaint, Plaintiff alleged Cherry Oscar as the primary management official involved in taking discriminatory actions towards the Plaintiff.

46. On May 28, 2019, Plaintiff was terminated from his position as a Reservist.

47. Prior to his termination on May 28, 2019, Plaintiff was not provided any notice of his pending termination, nor was he provided any opportunity to respond to the allegations alleged in the termination notice.

48. On July 12, 2020, Plaintiff amended his EEO complaint to include his termination from service on May 28, 2019.

## COUNT I

**(Discrimination based on age in Violation of The Age Discrimination in Employment Act of 1967 and 29 U.S.C. § 623, *et seq.*,)**

49. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

50. As described above, Defendant took adverse employment actions against Plaintiff because of her age.

51. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages.

## COUNT II

### (Reprisal based on Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.)

52. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

53. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII of the Civil Rights Act of 1964. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII.

54. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus for the Plaintiff participating and utilizing protected procedures in violation of Title VII.

55. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to:

    a.    Back pay and benefits

    b.    Interest on back pay and benefits

    c.    Compensatory damages for pain and suffering

    d.    Other non-pecuniary damages

    e.    Attorney's fees and costs

    f.    For such other relief, this Court deems just and equitable

## JURY DEMAND

The Plaintiff requests trial by jury.

Respectfully Submitted,

By /s/Samantha Ghezelbash
**Samantha Ghezelbash**
FL Bar No.: 0127189
Legal Lion Employment Law Firm, P.L.L.C.
1775 South Kings Avenue
Brandon, FL 33511
Office: (813) 437-0300
Facsimile: (813) 437-0301
Email: Samantha@LLAdvocates.com
Attorney for Plaintiff

**Loretta Poston**
FL Bar No.: 0121898
Legal Lion Employment Law Firm, P.L.L.C.
1775 South Kings Avenue
Brandon, FL 33511
Office: (813) 437-0300
Facsimile: (813) 437-0301
Email: Loretta@LLAdvocates.com
Attorney for Plaintiff